`

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIE RODGERS,       ) | |
|        Plaintiff    ) | |
| ) | |
|     v.               ) | Civil Action No. 10-12009-KPN |
| ) | |
| CALLAWAY GOLF OPERATIONS,   ) | |
| INC., AND LOCAL 1851,      ) | |
| INTERNATIONAL BROTHERHOOD  ) | |
| OF SHIP BUILDERS, BLACKSMITHS, ) | |
| FORGERS AND HELPERS, AFL-CIO, ) | |
| ) | |
|        Defendants  ) | |

MEMORANDUM AND ORDER WITH REGARD TO
PLAINTIFF'S MOTION TO REMAND AND DEFENDANT
LOCAL 1851'S MOTION TO DISMISS (Document Nos. 10 and 19)
May 10, 2011

NEIMAN, U.S.M.J.

This is a civil rights action in which Willie Rodgers ("Plaintiff") seeks to recover damages from his former employer, Callaway Golf Operations, Inc. ("Callaway"), and his union, Local 1851 International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO ("Local 1851"), for their allegedly discriminatory treatment of him in violation of Mass. Gen. L. ch. 151B.  The action was originally filed in Hampden County Superior Court on October 18, 2010, but was removed to this forum by Local 1851 and certain individual defendants who have since been voluntarily dismissed.

Presently, Plaintiff moves to remand the matter to state court, arguing that it was improperly removed. Local 1851 has opposed the motion and, in turn, has moved to dismiss pursuant to both FED. R. CIV. P. 12(b)(1), asserting that this court lacks subject matter jurisdiction, and FED. R. CIV. P. 12(b)(6), asserting that Plaintiff has failed to state claims upon which relief may be granted. For its part, Callaway has answered Plaintiff's complaint and is not a party to Local 1851's motion to dismiss.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); FED. R. CIV. P. 73. For the following reasons, the court will deny Plaintiff's motion to remand and grant Local 1851's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). Callaway's status as a defendant remains unaffected by this decision.

## I. Factual Background

The following facts come from Plaintiff's complaint and are stated in a light most favorable to him. *See Stanton v. Metro Corp.*, 438 F.3d 119, 123 (1st Cir. 2006). Plaintiff, who is African-American, was hired by Callaway's predecessor in 1974 and worked on the factory floor without discipline or incident for over thirty-five years. (Compl. ¶ 6.) While working for Callaway in 2006 or 2007, Plaintiff claims that he and his co-workers "complained to a Callaway supervisor that a white co-worker referred to a black co-worker as 'nigger'" but that the white co-worker was disciplined "little or not at all." (*Id.* ¶ 7.) Plaintiff also claims that, at various times from 2006 through 2010, white co-workers threatened others in the workplace but, again, were disciplined "little or not at all." (*Id.* ¶ 8.)

Plaintiff goes on to assert that on December 17, 2009, certain events giving rise

to this action took place at a Local 1851 meeting held in Callaway's breakroom, the purpose of which was to elect union stewards. (*Id.* ¶ 9.) Plaintiff entered the breakroom during the meeting and made disparaging comments about Local 1851 and its Business Agent. (*Id.*) Local 1851's Business Agent and President subsequently met with Callaway's Director of Human Resources and reported Plaintiff's comments in order to convene a disciplinary meeting. (*Id.* ¶ 10.) A short time later, on December 21, 2009, Plaintiff was summoned to a meeting with Callaway's Director of Human Resources and Local 1851's Business Agent and President. *(Id.* ¶ 11.) Plaintiff was then terminated by Callaway for verbally abusing its employees at the December 17th union meeting. *(Id.*) Plaintiff asserts that no white employee had ever been so treated by Callaway or Local 1851. (*Id.* ¶¶ 11, 13.*)*

Although Plaintiff's complaint originally consisted of four counts, only Counts One and Two remain. Count One, against Callaway, seeks "damages in the form of lost past and future compensation and benefits and severe emotional distress" for violation of Mass. Gen. L. ch. 151B, which prohibits discrimination on the basis of race. (Compl. ¶¶ 16, 17.) Count Two levels identical charges against Local 1851. (*Id.* ¶¶ 19, 20.) Counts Three and Four, which had alleged malicious interference with employment as well as conspiracy to do the same against the Union President and Business Agent, are no longer before the court. (*Id.* ¶¶ 21-25.) Plaintiff voluntarily dismissed those individual defendants from the action after its removal from state court. (*Id.*) Plaintiff also voluntarily dismissed a third individually named defendant, Robert Bourdeau, Callaway's Director of Human Resources, who was named in Count One of

the Complaint.

## II. Discussion

A. Plaintiff's Motion to Remand

Although a complaint may allege only violations of state law, a defendant "may remove an action from the state court in which it was filed to the appropriate federal district court, provided that the defendant can show some basis for federal jurisdiction." *Dance v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999). Here, as indicated, Plaintiff filed his complaint in Hampden County Superior Court, asserting violations of Mass. Gen. L. ch. 151B. Pursuant to 28 U.S.C. §1446, Local 1851 and the individually named union defendants removed the action on the basis of federal question jurisdiction, asserting preemption of Plaintiff's state law claims by Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. 185(a), the National Labor Relations Act ("NLRA"), 29 U.S.C. §158, and the duty of fair representation, which also derives from the NLRA. S*ee BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824 (1st Cir. 1997).[1]

In particular, Local 1851 and the individual union defendants, when removing the matter to this forum, asserted that Count Two (racial discrimination in violation of

---

[1]Defendant's Notice of Removal appears to mistakenly link the duty of fair representation, which implicates Section 9 of the NLRA, with Section 8 of the NLRA, the provision governing unfair labor practices. The error is immaterial for purposes of Plaintiff's remand motion but, to be clear, the court has treated Section 8 preemption and the duty of fair representation preemption as separately asserted grounds for removal.

4

Mass. Gen. L. ch. 151B) was preempted by the NLRA. They also asserted that Counts Three (malicious interference with employment) and Four (conspiracy to do the same) were preempted by the LMRA. In his motion to remand, Plaintiff maintains that his claims are truly state law violations only and, as such, were improperly removed.

It is clear to the court that the removal to this forum was appropriate if for no other reason than Section 301(a) of the LMRA, which, in essence, provides for federal jurisdiction of suits for violation of contracts between an employer and certain labor organizations. *See* 29 U.S.C. § 185(a). To be sure, Plaintiff argues that his claims against Local 1851 and the individual defendants do not rely on an interpretation of the collective-bargaining agreement ("CBA"). Indeed, as Plaintiff asserts, the complaint does not cite, quote, or reference the CBA and does not refer to any grievance procedure or arbitration proceeding, both of which would be governed by the CBA. In the court's opinion, however, that silence is of little moment.

Complete preemption of a state law claim by Section 301 of the LMRA is triggered if "the resolution of [that] claim depends upon the meaning of a collective-bargaining agreement." *BIW Deceived,* 132 F.3d at 824 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405-06 (1988)). Thus, despite a complaint's lack of any explicit reference to a collective-bargaining agreement, the "powerful preemption [of Section 301] propels a significant exception to the well-pleaded complaint rule- the artful pleading doctrine. The doctrine empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim." *Id.*

Here, as described, in Counts Three and Four of his complaint Plaintiff originally

alleged malicious interference with employment and conspiracy to do the same against two individual defendants, *i.e.*, the Business Agent and President of Local 1851. Such claims, in the court's view, would require an assessment of the collective-bargaining agreement ("CBA") between Local 1851 and Callaway, insofar as those claims implicate the "employment relationship" at issue. As the First Circuit has explained, determining whether a supervisor has interfered with an individual's employment contract requires knowledge of the rights of that individual and the employer under a collective-bargaining agreement. *See Magerer v. John Sexton & Co.*, 912 F.2d 525, 530-531 (1st Cir. 1990); *see also Troconis v. Lucent Technologies, Inc.*, 160 F. Supp. 2d 150, 155-156 (D. Mass. 2001) (Section 301 of the LMRA preempts counts of malicious interference with employment because resolution of such claims depends upon interpretation of collective-bargaining agreement).

Even a brief look at the CBA confirms that the discharge of Callaway employees is governed by its provisions. As such, a determination of whether Plaintiff's discharge and the loss of his "past and future compensation and benefits" were caused by "interference" from the individual union defendants, as alleged in the complaint, requires a determination as to whether the discharge conflicted with the provisions of the CBA.

Granted, after the case was removed to this forum, Plaintiff dismissed the claims against the individual union defendants. However, that development too, is of little importance when deciding if the complaint was properly removed. Thus, even though Counts Three and Four may have since fallen by the wayside, "whether jurisdiction

exists is determined based on the state of the complaint at the time of removal." *Magerer*, 912 F.2d at 529. As described, the individual union defendants were named defendants in the complaint at the time of the removal and they, together with Local 1851, have made a "colorable" showing of federal jurisdiction with respect to Counts Three and Four. Accordingly, the removal was proper and Plaintiff's motion to remand will be denied.[2]

<u>B. Local 1851's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to F<small>ED</small>. R. C<small>IV</small>. P. 12(b)(1)</u>

Local 1851 seeks dismissal of Court Two, the only count in which it is named, based on a lack of subject matter jurisdiction. In essence, Local 1851 argues that Plaintiff's claim of discrimination under Mass. Gen. L. ch. 151B is actually a claim arising under Sections 7 or 8 of the NLRA and, therefore, jurisdiction vests exclusively with the National Labor Relations Board ("NLRB"). *See San Diego Building and Trades Council v. Garmon*, 359 U.S. 236, 245 (1959) (NLRB has exclusive jurisdiction over claims arising from conduct that is arguably protected by Section 7 or prohibited by Section 8). For the reasons which follow, the court finds Defendant's argument unpersuasive.

When a court is faced with a Rule 12(b)(1) motion to dismiss, the plaintiff has the burden of establishing that subject matter jurisdiction exists through competent

---

[2]As a result, the court finds it unnecessary to address the propriety of removal to the extent it was based on Section 158 of the NLRA and/or the union's duty of fair representation. Even so, as discussed below and given the context of the events preceding those articulated in the complaint, it is likely that removal was proper based on the duty of fair representation.

proof supported by a preponderance of the evidence. *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 98 (1st Cir. 1982). In determining whether it is vested with jurisdiction, the court can look beyond the pleadings to outside materials without converting the motion to one for summary judgment. *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002). Here, Local 1851 urges the court to consider the charge which Plaintiff lodged with the Massachusetts Commission Against Discrimination ("MCAD") prior to initiation of the instant action. In effect, Local 1851 asserts that the MCAD charge reveals that Plaintiff's state law claim is more accurately a federal claim within the exclusive jurisdiction of the NLRB.

In accord with the latitude afforded courts in Rule 12(b)(1) motions, the court has considered Plaintiff's MCAD charge and has found that it does provide some insight to the cause of Plaintiff's "disparaging comments" during the December 17th union meeting. In the court's opinion, however, the MCAD charge is of little assistance to Local 1851's Rule 12(b)(1) motion.

According to the MCAD complaint, three months prior to the December 17, 2009 meeting, Plaintiff filed charges with the NLRB asserting that Local 1851 refused to file a grievance against Callaway on his behalf. (MCAD Compl. ¶ 3.) Plaintiff admitted that, at the time of the meeting, he was "still upset about the discriminatory practices [he] had alleged against" Local 1851 and, upon entering the breakroom, referred to the union and its Business Agent in derogatory terms. (MCAD Compl. ¶ 4.) Accordingly, Local 1851 asserts, Plaintiff's remarks at the meeting and his subsequent termination implicate the NLRA. In effect, Local 1851 argues, Plaintiff was "still upset" about the

union's failure to support his discrimination claim against Callaway.

In the court's opinion, however, Plaintiff's critique of the union at the December 17th meeting does not fall under the protected "concerted activities" outlined in Section 7 of the NLRA. Section 7, in pertinent part, reads as follows:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection...

29 U.S.C. § 157. These various "concerted activities" all involve individuals promoting or defending a union's objectives. *See Local Union No. 12004, United Steelworkers of Am. v. Massachusetts*, 377 F.3d 64 (1st Cir. 2004) (discriminatory epithets made on a picket line arguably protected by Section 7 and prohibited by Section 8 for purposes of preemption analysis); *San Diego Building and Trades Council v. Garmon*, 359 U.S. 236 (1959) (union picketing to pressure employer to retain only workers who were members of the union arguably protected by Section 7 of the NLRA). In turn, Section 8 prohibits an employer's interference with any of the activities protected by Section 7. *See* 29 U.S.C. § 158(a)(1).

Plaintiff's remarks at the December 17th meeting, however, did not involve such concerted activity; he obviously was not picketing or in other ways organizing "for the purpose of collective bargaining or other mutual aid or protection." In short, even if Plaintiff's vague insults were made at a union meeting and were, at least in part, motivated by frustration with the union, they do not rise to the level of concerted activity protected by Sections 7 and 8. Accordingly, Defendant's motion to dismiss, to the

extent it is grounded in Rule 12(b)(1), will be denied.

### C. Local 1851's Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6)

Alternatively, Local 1851 seeks dismissal of Count Two pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  To be sure, a complaint generally requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  According to the Supreme Court, however, this means that a plaintiff must allege enough facts so that the claim is "plausible on its face," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56, 570 (2007), *i.e.*, the factual content pled should "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A court, in turn, must either confine itself to the four corners of the complaint or, if it intends to consider matters outside the pleading, convert the motion to one for summary judgment under Rule 56.  *See* FED. R. CIV. P. 12(d); *see also Dynamic Image Technologies, Inc. v. United States*, 221 F.3d 34, 37 (1st Cir. 2000).  However, where a complaint's factual allegations are linked to and rely on a document outside the pleadings, a court may consider that document when addressing a motion to dismiss under Rule 12(b)(6).  *See Beddall v. State St. Bank and Trust Co.*, 137 F.3d 12 (1st Cir. 1998) (affirming trial court's decision to review an agreement that was neither appended to nor incorporated in the complaint by explicit reference but which was linked to the factual allegations of the complaint).

As described, Plaintiff's complaint pointedly excludes any reference to his MCAD charge, presumably because that charge is broader in scope and would

naturally give rise to the very jurisdiction of this court he presently seeks to avoid. The narrow scope of Plaintiff's complaint, of course, does not itself compel examination of his MCAD charge but, in the court's estimation, the nature of Plaintiff's claims does. Specifically, Count Two of Plaintiff's complaint, discrimination based on race under Mass. Gen. L. ch. 151B, required him, before bringing the action to court, to first file a charge of discrimination with the MCAD within 180 days of the relevant conduct. *See* Mass. Gen. Laws. ch. 151B § 5; *Stewart v. Kuligowska*, 28 F.Supp.2d 690, 691-92 (D. Mass. 1998) ("Failure to file a proper and timely charge of discrimination with the MCAD is a bar to any subsequent action in court."). Thus, Plaintiff's MCAD charge should have been appended to or, at the very least, referenced in Plaintiff's complaint. Accordingly, the court has considered the MCAD charge, provided by Local 1851 in its motion to dismiss, since it is obviously linked to the factual allegations in Plaintiff's complaint.

In his MCAD charge, Plaintiff asserted that the derogatory comments he made during the December 17th meeting were the result of his discontent over the "discriminatory practices" he alleged against both Callaway and Local 1851. Those practices, described by Plaintiff, were Callaway's failure to follow a contract with Local 1851 and, as well, Local 1851's failure to file a grievance on Plaintiff's behalf after he reported Callaway's allegedly discriminatory practices. (MCAD Comp. ¶ 3.) Thus, it is clear that Plaintiff's claims, although labeled chapter 151B violations only, implicate the union's possible breach of its duty of fair representation. That duty stems from its authority to act as union members' exclusive bargaining representative pursuant to the

NLRA and "includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *BIW Deceived,* 132 F.3d at 830 (citing *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). Where state law claims "invoke rights derived from a union's duty of fair representation," such claims are preempted by federal law governing the union's rights and duties arising out of Section 9(a) of the NLRA.[3] *Id.* at 831.

That is the situation here as well. In short, the acts asserted in Plaintiff's complaint are inextricably intertwined with the events precipitating the December 17th meeting, namely, his conviction that Local 1851 violated its duty of representation by failing to file a grievance on his behalf for reasons he perceived as discriminatory. As such, Plaintiff's present claim of race discrimination in Count Two is preempted by federal law. *BIW Deceived,* 132 F.3d at 830 ("state law is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation"). Accordingly, the court has little choice but to dismiss Count Two of Plaintiff's complaint for failure to state a claim upon which relief may be granted.

---

[3] Section 9(a) of the NLRA provides in pertinent part:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment...

29 U.S.C. § 159(a).

III.  Conclusion

For the reasons stated, Plaintiff's motion to remand is DENIED.  Local 1851's motion to dismiss is DENIED insofar as it asserts lack of subject matter jurisdiction pursuant to 12(b)(1), but ALLOWED for failure to state a claim pursuant to 12(b)(6).

IT IS SO ORDERED.

DATED: May 10, 2011

   /s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge